Thank you, Chantel. Case number 15-1443, John Loffredo et al. v. Daimler AG and State Street Bank and Trust Company and also Thomas Lasorda. Argument not to exceed 15 minutes for the plaintiff, 15 minutes to be shared by the defendants. Mr. Thompson, you may proceed for the appellant. Thank you. Good morning, Your Honors. This is Jeffrey Thompson on behalf of the plaintiffs. And I would like to start out by addressing the Montanile case from the Supreme Court, which State Street has recently cited as an additional authority. And that case is really legally and factually distinguishable from this case because there, a retirement plan fiduciary was suing a plan participant under the plan's subrogation clause trying to obtain reimbursement for medical expenses that the plan had laid out previously on behalf of the participant. The plan fiduciary's theory of relief was an equitable lien. Here we have an entirely different situation. The plaintiffs here are plan participants and the defendants are fiduciaries. This is the reverse. The distinction in that regard makes a critical difference. The Supreme Court in Cigna v. Amara distinguished the Supreme Court's Mertens and Great West cases for the same reason. Section 502A3 of ERISA's civil enforcement provision authorizes courts to impose the types of relief that were traditionally available in equity courts. Those types of relief include reformation, rescission, accounting, equitable lien, estoppel, injunctions, surcharge, and things of that nature. It just so happened in the Montanal case, the only type of remedy at issue was an equitable lien. Here, the plaintiffs have submitted a proposed first amended complaint seeking to obtain a surcharge remedy, not an equitable lien. Counsel, this is Judge Sutton. It's abuse of discretion to review when it comes to a motion to amend a complaint. We had the whole case come up here the first time. These arguments that you're raising now weren't raised before the district court that first time. We obviously put a lot of energy into figuring out what to do with the case and we left the state law age discrimination claim in. It seems hard to me to say that it's an abuse of discretion for the district court judge on remand after most of the claims are thrown out with one left to not allow the plaintiffs. I think the district court might have had discretion to do this, but I don't see how it's an abuse of discretion to say we're not going to let you add a new arista claim or change the arista claim. Let me address that. I think that's a question that deals with the mandate rule and the law of the case doctrine. In that respect, there's two things. The first question is whether or not the mandate rule or the law of the case doctrine apply. I think that question would be subject to de novo review if the mandate rule or law of the case doctrine do apply. Counsel, this is Jed Sutton. Let me just raise a way of thinking about it without worrying too much about the names we put on it. Whether it's law of the case, forfeiture, whatever label we put on this, I think it's hard to say the district court wouldn't have some discretion. The question then is whether it was abused. I'll even grant you that maybe law of the case is an unusual situation. It's not obvious to me it is law of the case, but even if it were law of the case, there would still be discretion in this kind of setting. The question is whether there's an abuse. Let me get to why I think it's an abuse of discretion then. I think the case law shows that both mandate rule and law of the case doctrine are discretionary if they apply in the first instance. Here we have a group of plaintiffs, nearly 500 of them, and they've attempted to assert a claim for a surcharge remedy against defendants who were responsible for managing money in an ERISA plant. The complaint that we've submitted, the proposed complaint, alleges that at least $200 million was drained from the Rabbi Trust prior to Chrysler's bankruptcy. Chrysler's bankruptcy filings revealed that there was only $117,000 of that $200 million left at the time of bankruptcy. Nobody has ever disclosed where that $200 million went or what it was used for. None of the money went to my clients, and therefore it had to have been used for impermissible purposes. One of the features of a top hat plan is there's no fiduciary duty. It's a plan designed for people that get higher income, so they get tax deferral, which means a lot to people with higher incomes. But the tradeoff is that it's not like traditional ERISA plans in that there's not a fiduciary duty situation. Yeah, I understand that very well, and I think the fact that this case is a top hat plan does not make a material difference because what our proposed first amended complaint is trying to do is enforce the contractual obligations under the Rabbi Trust. We're not trying to enforce any fiduciary duty rule that's set forth under ERISA, the statute. In this case, top hat plans still have fiduciaries. They still have people that are managing money on behalf of the participants, and in this case it happened to be the defendants. The top hat plans are only exempt from ERISA's fiduciary duty provision, and we're not trying to enforce that. We're trying to enforce the provisions of the Rabbi Trust, which these defendants were acting under. Excuse me for a second. This is Judge Moore, and I'm sorry about my voice. It's really bad. But we did say in the prior opinion it would be futile to give plaintiffs an opportunity to refile an ERISA claim when the federal statute exempts top hat plans from its coverage. So why is that not preclusive of your going ahead with this Rabbi Trust claim? Judge, let me address that, and that's in footnote 2 of the opinion, and what that says is that it would be futile to allow the plaintiffs to replete a claim for benefits under section 502A1B of ERISA, and that's not what we're trying to do. We're trying to assert a claim under 502A3 for surcharge, which is appropriate under the Cigna case, and we're trying to enforce the terms of the Rabbi Trust, and I believe that it's appropriate to enforce the Rabbi Trust under section 502A3 of ERISA, which is intended by... This is Judge Stranch. Let me ask you a little more fully about that footnote, because the determination that granting leave to replete the claim appears futile was also based on the statement that the plan authorizes the administrators to purchase annuities on a selective basis. Doesn't that directly address your claim that there is a violation of the plan document? Well, it does address one of the violations that we've alleged. We've alleged other violations, including the change of control provisions and the use of assets for impermissible purposes. We also alleged, as you point out, the violation for the annuity issue, and the annuity provision of the SRP, section 4.15, it doesn't allow the descendants to purchase annuities in bad faith, which we've alleged. In addition to that, if you use the Rabbi Trust assets to purchase the annuities, the obligations set forth in the Rabbi Trust come into play. For example, 2.1 imposes the duty of prudence upon the descendants. Counselor, I think what I'm trying to understand is if our court has actually ruled on the futility issue by having looked at those merit claims that you made, why doesn't that resolve the issue for you? It doesn't because this court actually expressly declined to address, I think this was part of Judge Sutton's opinion, he declined to address all the particular violations of the Rabbi Trust that we've alleged in the first amended complaint because at the time of the first appeal, we had never set forth a proposed amended complaint that identified specific provisions of the Rabbi Trust and specific conduct of the descendants that had violated the Rabbi Trust. I think what we're talking about is the portion of Judge, correct me if I'm wrong, but is this not the portion of Judge Moore's opinion that was the majority opinion? The footnote that we were discussing initially was part of Judge Moore's opinion, that's footnote two. There was another statement in the opinion, and I could be wrong about this, my recollection is that it was part of Judge Sutton's opinion that said generally that we made all these arguments based upon violations of the Rabbi Trust in the appellate briefs, we were not given an opportunity... What I'm trying to understand is that I joined Judge Moore fully in her opinion, so that stands as the majority opinion for the decisions that were made in it. And my question is, didn't her opinion address and resolve this issue? It did not. The opinion only addressed whether it could be replet as a claim under Section 502A1B. It didn't address the surcharge issue under Section 502A3. Counsel, this is Judge Sutton, but it just seems to me you're in a tricky spot. I mean, you've either got the situation where the claim really is like what Judge Moore was addressing in footnote two, in which it really is mandatory to rule all the case, it's done, we've decided it, or it's something you didn't raise at all in the first appeal, and why in the world should it be allowed now when all we did was remand for consideration of the state age claim? That just seems like the bind you're in. Yeah, I agree that's a bind, but it was a general remand. I think that the interests of justice require that we have an opportunity to have a court consider the substantive viability of the claims that we've set forth for violations of the Rabbi Trust. I think that my clients have a right to have those matters heard substantively by a court, and not have them thrown out on a technical basis. I think that, in and of itself, the nature of the violations, the purpose of ERISA, and the hardships that it's imposed on my clients justify a departure from the law of the case and mandate rule in the event that they apply in the first instance. This is Judge Moore. I'm afraid that you have used up your 11 minutes. You have 4 minutes saved for rebuttal. Do you wish to use those now to address your age claim, or do you wish to save it for rebuttal? I'll save it for rebuttal. I think the age discrimination claim is sufficiently, for the most part, sufficiently addressed in the brief. Okay, fine. Ms. Aaron, I believe you're next. Yes, Your Honor. This is Jacqueline Aaron for Defendant Daimler, AG. Before I turn to the age discrimination claim, I'd like to make a couple of comments regarding the motion to amend, to add the ERISA claims. Certainly, the plaintiffs have not shown any abuse of discretion by Judge Cook in denying them leave to amend. If you look at his opinions, he very carefully went through the provisions of the Rabbi Trust. They had argued extensively on the original motion to dismiss the state claims under ERISA, and as this Court has instructed, Judge Cook carefully considered whether they could, in fact, state a claim under ERISA, and they could not. In the face of their motion to amend, Judge Cook looked at their allegations, again, methodically through the prior decisions that he had made in his first opinion, and concluded that it was still futile and that he would not allow them to amend, and that ruling should stand. As to the merits of the ERISA claim, just speaking as to Daimler in particular, Mr. Thompson said that he wanted to enforce a contract claim under the Rabbi Trust, and as we have repeatedly pointed out, Daimler wasn't a party to the Rabbi Trust. It wasn't named in the Rabbi Trust in any fashion. The contract was entered into before Daimler even acquired an interest in Chrysler. In addition, with respect to the alleged impermissible use of funds, he refers to the $200 million that was in the Rabbi Trust at the time that Daimler relinquished its 80.1% controlling interest in Chrysler, and then sometime after that, they said that it was dissipated and they never explained how, but in any event, that's not any sort of wrong that could be laid at the door of Daimler. As to the Montanil case, the reasoning of the case is fairly clear, that when a plaintiff can't seek monetary damages under subsection 1132A3 of ERISA, the fact that it arose in a different context is really not relevant to the statement of what the court said, which is actually perfectly consistent with what this court held in its prior opinion about the availability of monetary relief under A3. Turning to the age discrimination claim, as we argued in the brief, this claim is preempted by ERISA by the broad preemption provisions in section 1132A. They argue that it is saved by savings clause in 1132D on the grant, which itself only purports to save federal laws, not state laws. In the court's prior opinion, the court held that the age discrimination claim was in the category of claims that could be exempt from the preemption under 1132D, and then remanded the court for further consideration of the issue. Interestingly, when we got back in the district court, the plaintiffs immediately moved to amend their complaint to add allegations that they could assert a claim under ADEA. Those appear in paragraphs 51 and 54 of their first amended complaint, when they alleged that each defendant owed a duty under ADEA to the plaintiffs, and they also alleged that the conduct allegedly violated ADEA. So they argued in their briefing papers in support of the motion to dismiss that those allegations concerning ADEA were important to save their claim from preemption. And that was true, but unfortunately for them, those allegations were not sufficient to save their claims, as both Judge Cook and Judge Cohn, under reconsideration, determined. The interest that they are trying to preserve via their age discrimination claims are not really federal interests, and 1132D is intended to save federal laws, not state laws. And in Shaw, the Supreme Court determined that looking at the face of ADEA, there are particular state laws that are specifically referenced in there, specifically the provisions that provide for joint state and federal enforcement of age discrimination claims. And the court held that that process was an important part of the statute, because it eased the workload of the EEOC. Counsel, this is Judge Sutton. So am I right that an upshot of this, which does seem counterintuitive, is that if, for example, Ohio has an exhaustion requirement built into ADEA, whereas Michigan does not, this claim would not have been preempted if it were an Ohio claim, but would be if it's a Michigan claim? Am I right that that's the upshot? They would both be judged under the standards under ADEA on what's necessary to allege a claim, and if they don't... I understand that, but I'm just making the point that, apparently Michigan does not have an exhaustion requirement, whereas federal law does. But you could have the same fact pattern we have here brought under Ohio, hypothetically, and I'm just making it up, but assume Ohio has an exhaustion requirement. It's incorporated into the federal scheme. I guess let's say they have the option to do that. That would mean a very similar state law claim would be permitted in Ohio, but not Michigan. Well, it's not that either that Michigan law is completely... I shouldn't use the word completely. Shaw provided for the partial preemption of state law claims, so it's not that Michigan state law regarding age discrimination is preempted in its entirety. Shaw specifically recognized that there could be partial preemption, and in this case, we have an instance where they have named as, in addition to their failure to meet the limitations requirements and the administrative filing requirements, which the Sixth Circuit has held are substantive parts of the ADEA statute, they have also named defendants that each defendant has argued that they are not subject to liability under the ADEA. And as Shaw clearly held, that if there is conduct that is prohibited by ADEA that's also prohibited by the state law statute, then it's not preempted on that ground. But if you're going to reach that conclusion, you certainly cannot hold that the state law is somehow saved, even though it brings in additional defendants that are beyond the purview of ADEA. This is Judge Moore. The question that I have is whether your rule then would mean that only state law, and only to the extent that it is identical to federal law, can be viewed as not being preempted. In other words, are you requiring that there be total identity between the state and federal ADEA law? No, I don't think so. Because for one thing, what the court held in Shaw was that the state administrative, the laws that provided for a state agency to hear claims, was not preempted because that was specifically referred to in the statute. And if you took away that piece of the state law, then the federal law would be impaired. Are you saying that the state must then hear the claims and do exactly what the federal court would do in an ADEA case? I can't speak to each and every possible nook and cranny of how the laws are applied, but certainly the issues we have here, which related to administrative exhaustion, the limitations period for bringing a claim, who can be sued, those are all major elements of an ADEA claim. And to the extent that you have varying state law requirements, there's no basis under the statute to give effect to those. Because it's a savings clause as written, and as the rationale of the court in Shaw explained, was intended to preserve federal laws. And it's not really enough to say that, well, we have state laws that serve the purpose of the age discrimination statute under federal law because they're all working towards the same general goal. And that's not enough because it's under the statute, it's federal laws that are saved. And the federal law is not just its ultimate broad goal. It is the goal as constrained by specific features such as who can be sued, what the limitations period is, who the plaintiffs can be. So those are all part of a careful balancing of interests on the part of the federal law that Congress and the President all put into effect. And to vary those by allowing, as long as the law is something that prohibits age discrimination, then we're going to give effect to all of these state laws, regardless of whether we have ultimately this incredibly difficult and confusing patchwork of state law remedies that govern the ERISA plan or that would impact the administration of the ERISA plan. Thank you. I think that your time is now up. So thank you very much. Thank you. Mr. Boyd, I think you're next. Good morning. May it please the Court. You've got a number of briefs and a number of issues. I want to point to only one that's specific to State Street so that it does not get lost in the more general discussion, and it has to do with the age discrimination claim against State Street that State Street is alleged to be an agent with responsibility for administering the plan and is being sued under the Michigan discrimination law as an agent. We've spelled out in our brief at page 43 and 44 why that approach to Michigan law is different in substance than the federal ADEA, and here's the reason. The ADEA does allow agents to be sued, and there's a very limited definition of when an agent can be sued. State Street doesn't fit it. That's discussed in the brief. More importantly, the ADEA imposes no financial liability on agents who are sued. That's the Sixth Circuit approach in your decision in Wathen v. General Electric. Agents can be sued, if they're the right kind of agent, on a respondeat superior basis to bring everyone into the courtroom, but they cannot be sued for a recovery of money. Now, in this case, they didn't sue to bring Chrysler into the case. They'd fought against Chrysler previously in the reorganization proceedings and lost, but what they are doing with respect to State Street is pursuing a claim for money damages on an agency theory that would not be allowed as a federal age claim. Because of that difference between the substantive law in the state and federal court, this claim is preempted. We also discuss in our brief why State Street is not the type of agent that can, in fact, be sued under either federal law or under Michigan state law. Didn't we address that in the prior opinion, though? Your opinion said that Michigan law allowed suing an agent, but there was no complaint before the court previously. The complaint before the court now spells out what they think are their agency allegations, and State Street doesn't fit, and we've addressed this in the brief, Judge Sutton. State Street is not, to use the ADA terms in your cases, someone who serves in a supervisory capacity in the company and has control over hiring, firing, and conditions of employment. So this is an issue that was not addressed with a complaint before the court previously. Is that not something that was addressed by the district court? Judge Trent, just the opposite. What the district court felt was that the issue had been precluded by your one-sentence ruling saying that State Street could be sued as an agent. And what we're saying is that the district court should have decided the point, and this court can decide it. You can affirm on any grounds. And the correct ground here is that when you read their first amended complaint, we're not the kind of agent that fits under either state or federal law, and more importantly, they are clearly asking now for money damages, recoveries from State Street that are not allowed under your own jurisprudence, Wathen v. General Electric. Plaintiffs have responded to that only by saying, well, State Street should be deemed to be an employer instead of an agent, but that's just abandoning the field on which they've argued previously. Okay. I think your three minutes are concluded. Thank you. Mr. Mast, you're next. Thank you, Your Honor. I represent Tom Lasorda, the only individual defendant named in this lawsuit. The law in this circuit, and in every other circuit, is clear that an individual like Mr. Lasorda may not be held personally liable for age discrimination under federal law. So allowing a state law age discrimination claim to be asserted against him does not provide a means of enforcing the ADA's commands and federal law would not be impaired by preemption here. Paraphrasing the Supreme Court's decision in Shaw, 1144D does not save the claim from preemption because the ADA in no way depends on the imposition of individual liability for its enforcement. On appeal, the plaintiffs make a number of arguments against preemption. They argue that the district court got it wrong here because the definition of employer in the ADA includes agent, but that same argument was specifically rejected by this court in the Watson case that Mr. Boies referred to. The plaintiffs also argue that ERISA doesn't preempt state law claims as long as the conduct at issue is illegal under the ADA, but that is also wrong. Allowing the plaintiffs to sue defendants like Mr. Lasorda, who cannot be held liable under federal law, does not in any way provide a means of enforcing federal law. In addition to the absence of individual liability under federal law, it's also noteworthy that the Michigan Civil Rights Act also applies to small employers while the ADA does not. Employers with fewer than 20 employees are not subject to the ADA at all, and under plaintiffs' example construction, a claim against a small employer would be saved from preemption by 1144D, even though that employer is not even subject to the ADA. That would also obviously apply to individual defendants like Mr. Lasorda, and that construction is completely at odds with the ERISA Savings Clause and with the Supreme Court's decision in Shaw. Finally, the plaintiffs say that the district court got it wrong because they sued under Michigan state law, so the fact that federal law does not allow for individual liability is completely irrelevant. That obviously explains precisely why the claim is preempted. State law allows for individual liability, but federal law doesn't, so preempting the state law claim does not impair federal law in any way. The district court correctly held that the plaintiff's claim against Mr. Lasorda is not viable under the ADA. It does not mirror a federal claim, and as a result it is not saved from preemption by 1144D. Thank you very much. I don't think so, but thank you very much. We now have Mr. Thompson with four minutes for rebuttal. Yes, Your Honor, thank you. The first thing I would like to address is Daimler's argument that it didn't sign the rabbi trust, so it can't be held liable under it. This court has already considered that argument in the Briscoe case and the Guyane International case from 2012, which hasn't been cited in the brief, but Judge Stranch, that happens to be an opinion that you wrote in. What the court said in both of those cases is that ERISA's definition of a fiduciary is a functional one. It doesn't matter what the labels in the plan or in the trust agreements are. It matters who actually has discretionary authority over the plan's money. That's the statutory definition, and in the Guyane case this court stated that Briscoe specifically reasoned that language in a contract purporting to limit fiduciary status does not override a third-party administrator's functional status as a fiduciary. In that case, the court held that because the defendant had the power to write checks on the plan's account, it met the definition of a fiduciary. We've pled allegations in our proposed complaint to establish that each of the defendants had that type of control over the rabbi trust. State Street held the money. That's clear that they were fiduciary. Lasorda, he was the one that decided to impose this practice of securitizing benefits with rabbi trust funds for active employees only. He presented that to the Daimler Board of Management. Daimler approved the decision. These defendants were the ones that had control over the trust money, and that's why they're fiduciaries, and that's why they're subject to surcharge under Section 502A3. Now, with respect to the age discrimination issue, the defense argument is based entirely on the Nolan and Warren line of cases that are cited in the briefs extensively, and these cases were wrongly decided for a number of reasons. First, it creates an impractical result. Plaintiffs have to follow some sort of hybrid between Elliott-Larsen Civil Rights Act procedures and ADEA procedures, but nothing in ERISA, nothing in Elliott-Larsen Civil Rights Act, and nothing in the ADEA tell them that. So effectively, that's going to gut pretty much all age discrimination claims under state law that involve retirement plans. Second, the Nolan and Warren cases focus only on ERISA's goal of providing uniform standards of conduct for planned fiduciaries. They don't consider ERISA's primary goal of providing increased protection for planned participants. Additionally, the rule that defendants want to impose in this preemption argument, it doesn't even advance ERISA's goal of creating standards of conduct because people in control of ERISA plans, administrators and fiduciaries, they can't engage in age discrimination either way, regardless of whether you have to file an administrative claim prior to filing suit or regardless of whether an individual can be held responsible, they still are prohibited from discriminating. And that's exactly what the court in the Shaw case said. If you look at the holding, which the defending court stated, we hold that New York's human rights law is preempted with respect to ERISA benefit plans only insofar as it prohibits practices that are lawful under federal law. The focus is on the conduct at issue, not the state law procedures, not who can be held liable, and that's what Shaw says. The Nolan and Warren courts improperly misread that and extended it to other things like the administrative filing requirement. And in fact, in the Devlin case, the Second Circuit followed Shaw and held that the New York human rights law was not preempted as it related to the plaintiff's claims. And in that case, the plaintiffs didn't file any administrative charge, but they still had a viable claim and it went forward on that. Excuse me, this is Judge Moore. Is your basic principle then that the procedural requirements of the state do not need to be followed even if they're different from the federal ADEA, but substantive requirements of the state insofar as they're different will be preempted? Yes, that is my position, and the reason for that is Section 633 of the ADEA expressly defers to the state enforcement of these matters. And if you modify state procedures and require states to follow federal procedures, that provision, Section 633 of the ADEA, would be impaired in violation of ERISA. Okay, I think that your time is now up. Do any of the judges have any other questions to ask Mr. Thompson? None for me. We thank all of you for your argument, and I appreciate your putting up with my voice. And all four counsel may disconnect from the phone.